UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 14-10-GFVT |
| | ) | |
| V. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| HENRY RAMER, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

*** *** *** ***

On February 20, 2015, the Government provided notice of its intention to use three of

Henry Ramer's prior bad acts as evidence against him at trial.  [R. 221.]  Ramer has now moved

to exclude the use of that evidence.  [R. 274.]  For the reasons stated below, Ramer's motion will

be GRANTED in PART and DENIED in PART.

**I**

On October 9, 2014, Ramer was charged by superseding indictment with twenty-nine

counts of mail fraud, a single count of conspiracy to commit money laundering, and one count of

selling unregistered securities.  [R. 51.]  In anticipation of trial, the Government filed notice of its

intent to present Ramer's prior bad acts as evidence at trial.  [R. 221.]  These prior bad acts

include: 1) a November 7, 1989 cease and desist Order issued by the Arizona Corporation

Commission (ACC); 2) a December 12, 2003 desist and refrain order issued by the California

Department of Corporations (CDC) which prohibited Ramer and the other officers from offering

for sale or selling unqualified securities; and 3) the fact that Ramer was a sales person for

*Hollywood Auditions,* a company that was the subject of numerous consumer complaints.[1]  [R. 221.]  Ramer objects to the admission of all of the above.  [R. 274.]  In response, the Government first argues that it should be able to present to the jury the existence of both the 1989 cease and desist order and also the 2003 desist and refrain order as *background* or *res gestae* evidence.  [R. 281 at 1-4.]  Second, the Government argues that all of its noticed evidence is also admissible under FRE 404(b).  [R. 281 at 4-8.]

## II

## A

In limited circumstances the Government may introduce evidence of past conduct if the conduct is sufficiently tied to the presently charged offense.  As has been explained by the Sixth Circuit:

> [p]roper background evidence has a causal, temporal or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense.

*United States v. Marrero*, 651 F.3d 453, 471 (6th Cir. 2011) (citations omitted).  When background or *res gestae* evidence is presented in this way, it is not subject to the strictures of Rule 404(b).  *United States v. Adams*, 722 F.3d 788, 810 (6th Cir. 2013) (*citing United States v. Clay,* 667 F.3d 689, 697 (6th Cir. 2012)).  Here, the Government argues that evidence of Ramer's 1989 cease and desist order and also the 2003 desist and refrain order are "intrinsic to,"

---

[1]     The 2003 desist and refrain order was actually never issued.  As explained by Ramer, the parties entered into a Consent Order on or about February 23, 2005, whereby the DFO was vacated and Ramer was ordered not to offer or sell securities consisting of interests in the partnerships identified in the Consent Order.  [R. 274 at 6.]  By its own terms, the desist and refrain order was vacated but "its findings [were] incorporated by reference" into the February 2005 consent order.  [R. 274-2 at 7.]  For simplicity, the Court will still refer to this event as the "2003 desist and refrain order."

and "directly probative" of, the mail and securities fraud allegations and, therefore, admissible background evidence. [R. 281 at 1-4.]

First, despite the fact that the Arizona and California orders were issued over ten years ago, the Government argues that the acts are sufficiently connected because they are "intrinsic to" the present allegations. [R. 281 at 1-3.] It is the Court's responsibility to determine whether the evidence has a sufficient "causal, temporal or spatial connection with the charged offense." *Marrero*, 651 F.3d at 471(quoting *Hardy*, 228 F.3d at 748). In Counts 1-29 of the Superseding Indictment, Ramer is charged with mail fraud. [R. 51-1.] Therein it is alleged that Ramer failed to disclose "material facts" to investors, one being "[t]hat the principals in the business were the subjects of state regulatory cease and desist orders for selling unregistered securities." [*Id*. at 7.] To prove mail fraud, the Government must show that "the scheme included a material misrepresentation or concealment of a material fact." Sixth Circuit Pattern Jury Instructions, *10.01 Mail Fraud (18 U.S.C. § 1341)*. In Count 31, where Ramer is charged with selling unregistered securities, the Government alleges that Ramer did "make untrue statements of material facts and omit to state material facts necessary in order to make the statements made…not misleading." [R. 51-1 at 13.] As articulated by the Government, information is "material" when "there is a substantial likelihood [that] a reasonable investor would have considered it important in deciding whether to buy." *United States v. Sayre*, 434 F. App'x 622, 623 (9th Cir. 2011) (*citing Basic Inc. v. Levinson*, 485 U.S. 224, 231-232 (1988)). The Government argues that investors would have considered Ramer's history of being ordered to cease and desist from the sales of certain securities as important when deciding whether or not to invest. And so, they argue that Ramer's past conduct is admissible to show that he made material misrepresentations when promoting the scheme at issue.

3

The Eleventh Circuit faced a substantially similar question in *United States v. Rafferty*, where the defendant was charged with securities fraud and the Government was tasked with proving that he "omit[ed] material facts in communications with investors."  296 F. App'x 788, 794 (11th Cir. 2008).  In that case, the Eleventh Circuit affirmed the district court's ruling that evidence of the defendant's prior securities fraud convictions, a permanent injunction entered against the defendant, and two civil fraud judgments were correctly admitted.  *Id*.  The Court found no abuse of discretion when the district court adopted the Government's argument that the above noted evidence was "part of the offense charged and thus intrinsic, as witnessed by the reference to the specific material omissions."  *Id.* at 795.

The Government also argues that evidence of Ramer's cease and desist orders are "inextricably intertwined" to the current charges because they "provide part of the narrative of the fraud."  [R. 281 at 3-4.]  Promotional materials lauded that the business was run by "experienced and proven oil producers who had been in the business for 30 or 40 years."  [R. 281 at 3.]  As characterized by the Government, Ramer's "fraudulent mischaracterization and exaggeration of his oil production experience" serves as both a "prelude to the charged offense" and "completes the story of the charged offense."  [R. 281 at 3 (quoting *Adams*, 722 F.3d at 810).]

To obtain a conviction, the Government must prove that Ramer made material misrepresentations or concealed material facts from investors.  Whether or not Ramer is, as was represented to his investors, an "experienced and proven" oil producer, or a fraud, is probative of whether such misrepresentations were made.  Consequently, references to the above cease and desist orders are admissible without considering Rule 404(b) because proof on these issues is intrinsic to, and also inextricably intertwined with, evidence of the charged offenses.

4

**B**

The Government also argues that evidence of Ramer's prior bad acts are admissible pursuant to FRE 404(b).  [R. 221; R. 281 at 4-8.]  This analysis rests on how the Government seeks to use the evidence.  In addition to the 1989 Arizona cease and desist Order, and the 2003 California desist and refrain order, the Government also seeks to introduce evidence of Ramer's time working at *Hollywood Auditions*.  Before proceeding into the 404(b) analysis, and after hearing argument on this point, the Court preliminarily finds that evidence related to Ramer's time at *Hollywood Auditions* is not "[e]vidence of a crime, wrong, or other act," as contemplated by FRE 404(b).  As a result, evidence of Ramer's time at *Hollywood Auditions* will not be further considered at this time.  If during trial, the parties believe that testimony relating to this issue becomes relevant they may approach the Court at that time.

Generally, the Government may not introduce evidence of prior bad acts at trial because of the concern that the introduction of such evidence may lead to an improper guilty verdict.  Rule 404(b)(1) responds to this concern:  "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  Like all rules, however, Rule 404(b) is not without exception.  Most notably, evidence of a crime, wrong, or other act "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).

The Sixth Circuit has articulated a three-step analysis for determining whether prior bad act evidence is admissible as permissible "other use" evidence.  "First, the district court must make a preliminary determination regarding whether there is sufficient evidence that the 'other acts' took place."  *United States v. Bell*, 516 F.3d 432, 441 (6th Cir. 2008) (quoting *United States*

5

*v. Lattner*, 385 F.3d 947, 955 (6th Cir. 2004)).  This burden is met "if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Id*. (*citing Huddleston v. United States*, 485 U.S. 681, 689 (1988)).  In the present case this is not at issue with regard to the cease and desist orders because the Defendant concedes in his motion that both the Arizona and California proceedings occurred.

Second, the Court must "determine whether those 'other acts' are admissible for a proper purpose under Rule 404(b)." *Id*.  "Legitimacy" requires a tri-partite finding of admissibility, materiality, and probativeness. *Id*. at 441-42.  Further, a "legitimate purpose" is something other than character propensity evidence, meaning that there must be some use for it other than supporting the inference that because Ramer behaved one pay in the past that he must also be guilty of the present charge.  *See id*. ("[T]he trial court must decide whether that evidence is probative of a material issue other than character").  Rule 404(b)(2) lists a number of permitted uses of "other acts" evidence, but the list is not exhaustive; Rule 404(b)(2) makes this clear by adding the words "such as" prior to the list to make it plain that it is only identifying common uses, not listing each and every acceptable use.  When read together:  "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).  Thus, the list is nothing more than a number of common uses of "other acts" evidence, not a mandate to pigeonhole an attempted use into one of the enumerated uses.  *See United States v. Bakke*, 942 F.2d 977, 981 (6th Cir. 1991) ("The list contained in Rule 404(b) is not exhaustive; evidence may be admitted for additional similar purposes").  This makes sense as Rule 404's purpose is to prohibit the use of "other acts" character evidence to prove that one acted in conformity therewith, not to require that the evidence be used in one of many precise ways.  *United States v.*

*Blankenship*, 775 F.2d 735, 739 (6th Cir. 1985) ("This is actually a rule of inclusion rather than exclusion, since only one use is forbidden and several permissible uses of such evidence are identified"); *see* Fed. R. Evid. 404(a)(1) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.")  The Government contends that details of Ramer's prior frauds are admissible because they show **intent** to perpetuate the fraud on his victims, that he had the requisite **knowledge**, and also because the prior acts demonstrate an **absence of mistake** or **lack of accident.**  [R. 281 at 4-8.]

The Government argues that Ramer's past cease and desist orders are probative of both his **intent** to defraud investors and of his **knowledge**.  "When a defendant is charged with a specific intent crime…404(b) evidence is admissible to prove intent, subject to the probative/prejudicial balancing."  *Lattner*, 385 F.3d at 957 (*citing United States v. Johnson*, 27 F.3d 1186, 1192 (6th Cir. 1994), *cert. denied,* 513 U.S. 1115, 115 S. Ct. 910 (1995) (when the Government bears "the affirmative duty to prove that the underlying prohibited act was done with a specific criminal intent, other acts evidence may be introduced under Rule 404(b).").  Amongst other things, Ramer is charged with mail fraud which requires proof that the "defendant had the intent to defraud" which is further defined as "act[ing] with an intent to deceive or cheat for the purpose of either causing a financial loss to another or bringing about a financial gain to oneself."  Sixth Circuit Pattern Jury Instructions, *10.01 Mail Fraud (18 U.S.C. § 1341)*.  Mail fraud is a specific intent crime.  *United States v. Stephens-Miller*, 582 F. App'x 626, 636 (6th Cir. 2014) (*citing United States v. Frost,* 125 F.3d 346, 354 (6th Cir. 1997)).  Ramer disagrees, arguing that evidence of the Arizona cease and desist order "is not relevant to the issues of [his] intent to defraud or knowingly devise a scheme to defraud" because, as he

7

construes the facts, the cease and desist order was more a "criticism of R&T's business practices, [than] a conclusion that the project was a scam on a criminal level." [R. 274 at 5.] The Court understands Ramer's objections, but notes that not all evidence admitted under FRE 404(b) needs to be suggestive of criminal activity. A similar argument was considered and rejected in *United States v. Benson,* where the Sixth Circuit found that evidence of cease and desist orders was admissible under 404(b) even though the "cease and desist orders did not accuse them of the crimes for which they were indicted" because they were proper 'other acts' serving as evidence of both knowledge and intent to defraud. 79 F. App'x 813, 820 (6th Cir. 2003).

Evidence of the prior cease and desist orders also demonstrates that Ramer's behavior was less likely in **mistake** or by **accident**. "[F]or other acts evidence to be admissible for the purpose of showing absence of mistake or accident, the defendant must assert a defense based on some type of mistake or accident." *Bell*, 516 F.3d at 442. One such defense is a "claim[] of innocent presence or association…[which] routinely open[s] the door to 404(b) evidence." *Lattner*, 385 F.3d at 957. As the Government notes, Ramer intends to argue that he "had no reason to know that the proceeds from the sale of fractional interests in either purportedly constituted proceeds of unlawful activity." [R. 272 at 2 (Ramer's Proposed Statement of the Case.)]

The second prong of the admissibility subtest requires a finding that the prior bad act evidence is "**material**" or "**in issue."** *Bell*, 516 F.3d at 442. Stated another way, "the government's purpose in introducing the evidence must be to prove a fact that the defendant has placed, or conceivably will place, in issue, or a fact that the statutory elements obligate the government to prove." *United States v. Merriweather*, 78 F.3d 1070, 1076 (6th Cir. 1996). As has been explained, Ramer's intent is at issue because he is charged with specific intent crimes

8

and he has pleaded not guilty.  Ramer places issues surrounding whether his actions were by accident or mistake at issue because it is anticipated that he will argue that he did not know what he was doing was wrong.

The final prong of this admissibility subtest, requires that the evidence must be "**probative** with regard to the purpose for which it is offered." *Bell*, 516 F.3d at 442.  "To determine if evidence of other acts is probative of intent, we look to whether the evidence relates to conduct that is 'substantially similar and reasonably near in time' to the specific intent offense at issue." *Id*. at 443 (citations omitted).  There is no question that the behavior leading to the cease and desist orders is "substantially similar."  As noted by the Government, the two cease and desist orders both stopped Ramer from "selling mining/drilling investments."  [R. 281 at 2.]

The question of whether the past acts are "reasonably near in time" presents a much more difficult question.  The Indictment charges that the illegal behavior begin in "mid-2012."  [R. 51-1 at 2.]  The Arizona cease and desist order was issued in 1989, twenty-three years before the behavior charged in the indictment.  The 2003 California desist and refrain order was drafted nine years before the behavior charged in the indictment but the consent order vacating the desist and refrain order is dated in February 2005, meaning that it was prepared seven years before the behavior outlined in the indictment.  [R. 274-2.]  Unlike his co-defendant, John Westine, Ramer did not spend the years between his prior bad acts and the present moment in prison.  *See United States v. Westine*, No. CRIM. 14-10-GFVT, 2015 WL 45515, at *6 (E.D. Ky. Jan. 2, 2015) ("While many years have passed since Westine's last conviction, the Court notes that Westine was incarcerated for nearly the entire period between his past conviction and committing his most recent fraud.")  While there is "no absolute maximum number of years that may separate a prior act and the offense charged," a survey of the case law puts the question into better

9

perspective.  *Id*. (quoting *United States v. Ismail*, 756 F.2d 1253, 1260 (6th Cir. 1985)).  In the

past, the Sixth Circuit has determined that eight-year-old convictions are not too remote for

purposes of 404(b).  *See United States v. Clark*, 2008 WL 821898, at *4 (E.D. Ky. Mar. 26,

2008); *United States v. Matthews,* 440 F.3d 818 (6th Cir. 2006); *United States v. Persinger,* 83 F.

App'x. 55, 59 (6th Cir. 2003).  Other Circuits have approved of the admission of marginally

older events.  *See United States v. Rubio-Gonzalez,* 674 F.2d 1067, 1075 (5th Cir.1982) (ten-year

old conviction admitted); *United States v. Foley*, 683 F.2d 273, 278 (8th Cir. 1982) (eleven-year

old conviction admitted under Rule 404(b)); *United States v. Engleman,* 648 F.2d 473, 479 (8th

Cir. 1981) (thirteen-year old conviction admitted).  The 2003 California cease and desist

occurred "reasonably near in time" to the behavior being prosecuted.  Without extenuating

circumstances, however, like those that existed in *Westine*, the Arizona cease and desist order is

too far removed for admission under FRE 404(b) and is therefore inadmissible for the purposes

anticipated by 404(b).

All three prongs of this subtest for determining whether the United States' intended use is

legitimate are satisfied as to the California cease and desist order.  Importantly, evidence of the

2003 cease and desists may *only* be used to show that Ramer did intentionally and knowingly,

and not by mistake or accident, perpetrate the presently charged fraud.  The evidence may not be

used to show that Ramer was acting in conformity with an alleged criminal character.  As it has

been explained, the evidence may be admitted without offending the purpose of the Rule's

prohibition on the use of character evidence to prove character propensity.

The third, and final, step in the 404(b) analysis requires that the Court "determine

whether the 'other acts' evidence is more prejudicial than probative."  *Bell*, 516 F.3d at 441

(quoting *Lattner*, 385 F.3d at 955).  Specifically, the Court must determine whether the probative

10

value of the evidence is *substantially* outweighed by the danger of unfair prejudice. *Id*. at 440. A certain degree of prejudice is presumed to occur when "other acts" evidence is introduced, even when done so for a legitimate purpose. Only in those instances where unfair prejudice is that much weightier than probativeness does this stage of the analysis require exclusion. "[R]egardless of the stated purpose, the likelihood is very great that the jurors will use the evidence precisely for the purpose it may not be considered; to suggest that the defendant is a bad person . . . and that if he 'did it before he probably did it again.'" *Bell*, 516 F.3d at 444 (quoting *Johnson*, 27 F.3d at 1193). As a result, the Court must carefully consider the prejudice inherent in each piece of contested 404(b) evidence when compared to its corresponding probativeness before ruling on its admissibility, and only in instances where there is a *substantial* risk of prejudice is it proper to exclude evidence on this ground.

The Court has considered this question and concluded that the evidence will be prejudicial but not unfairly so. The desist and refrain/consent order stopped Ram Energy from selling securities in oil and gas leases [R. 274-2] and is probative of his intent, knowledge and also demonstrates that his actions were likely not made by mistake or by accident. In an effort to minimize prejudice, the Court will incorporate jury instructions that advise the jury of the proper uses of the prior bad act information. *See Merriweather*, 78 F.3d at 1077 ("The magnitude of that risk might well have been reduced by a clear and concise instruction identifying for the jurors the specific purpose for which the evidence was admissible and limiting their consideration of the evidence to that purpose.") As the Sixth Circuit has explained this task:

> To apply Rule 404(b) fairly, the district court must carefully identify, in its instructions to the jury, the specific factor named in the rule that is relied upon to justify admission of the other acts evidence, explain why that factor is material, and warn the jurors against using the evidence to draw the inferences expressly forbidden in the first sentence of Rule 404(b).

11

*Johnson*, 27 F.3d at 1194.

**III**

Having fully considered the issue, the Court hereby concludes that the Government may refer to both Ramer's 1989 cease and desist order and also to the 2003 desist and refrain/2005 consent order as background evidence.  Of the two cease and desist orders, only the 2003 California order is admissible under FRE 404(b) as evidence of intent, knowledge, absence of mistake, or lack of accident.  As the Arizona order lacks the necessary temporal proximity, it is not admissible.  Finally, evidence and comments surrounding Ramer's involvement in *Hollywood Auditions* is outside the scope of the 404(b) and inadmissible barring some further showing of its relevance and admissibility.   The Court will provide the jury with instructions regarding the appropriate uses of the admitted 404(b) evidence.  To the extent that any hearsay or authentication objections exist, the Court will consider these objections in the context of testimony.  It is so ORDERED.

This, the 4th day of May, 2015.

**Signed By:**

*Gregory F. Van Tatenhove*

**United States District Judge**

12
